IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 JUL 3 AM 11 33

STEPHAN HARRIS, CLERK
CHEYENNE

STEVEN SMOTHERS,

Plaintiff,

vs.

SOLVAY CHEMICALS, INC., a
Delaware corporation,

Defendant.

Case No. 11-CV-200-F

**ORDER RESERVING RULING ON DEFENDANT'S MOTION IN LIMINE CONCERNING THE EMPLOYEE HANDBOOK [DOC. NO. 54]; DENYING DEFENDANT'S MOTION IN LIMINE TO LIMIT TESTIMONY OF TREATING PHYSICIANS AND OTHER HEALTHCARE PROVIDERS [DOC. NO. 55]; AND GRANTING PLAINTIFF'S MOTION IN LIMINE [DOC. NO. 56]**

This matter is before the Court on motions in limine filed by both Parties. This case is currently set for a five day Jury Trial beginning July 14, 2014 at 8:30 A.M. The remaining claims are: (1) Violation of the ADA; and (2) Violation of the FMLA. The dismissal of Plaintiff's breach of contract claim was affirmed by the Tenth Circuit. Defendant has filed two motions in limine and Plaintiff has filed one motion in limine. Upon reading the Parties' written submissions, hearing oral arguments, and otherwise being fully informed in the premises, the Court FINDS and ORDERS as follows:

## BACKGROUND[1]

Plaintiff contends that prior to his termination he worked eighteen years in Defendant's trona facility in Sweetwater County, Wyoming without any significant disciplinary action. Plaintiff was terminated on August 26, 2008. The stated reason was a safety violation. Plaintiff states this was a pretext since it was his first safety violation and other similarly situated employees were not disciplined as harshly. Plaintiff states he has a serious health concern and is an individual with a disability as defined by the ADA because of physical impairments in his neck and back causing chronic pain and insomnia and substantial interference with the major life activity of sleeping. Plaintiff further states he took FMLA leave from work on occasion to deal with his health conditions. Plaintiff asserts Defendant retaliated against him for taking FMLA leave and discriminated against him on the basis of his disability by singling him out for harsher discipline and terminating his employment.

Plaintiff seeks actual damages, liquidated damages, compensatory damages, punitive damages, interest, and attorney's fees and costs.

Defendant claims it dismissed Plaintiff for a safety violation. Defendant claims Plaintiff violated Defendant's safety policies when he put himself above Defendant's safety policies and refused to complete a lock-out tag-out before he started work to repair a hydrochloric acid pump pipe section. Defendant also claims that even though Plaintiff's safety violation was serious and significant in and of itself, the seriousness of the situation was further heightened by Plaintiff's belligerent attitude.

---

[1] The statement of the Parties' respective positions is taken from their proposed joint final pretrial order.

2

Initially, this Court granted summary judgment to Defendant on all of Plaintiff's claims. On appeal, the Tenth Circuit affirmed with respect to Plaintiff's breach of contract claim, but remanded with respect to Plaintiff's ADA and FMLA claims. *Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530 (10th Cir. 2014). With respect to Plaintiff's FMLA claims, the Tenth Circuit stated:

> The evidence viewed in Mr. Smothers' favor shows that: (1) Solvay treated Mr. Smothers differently from similarly situated employees who committed comparable safety violations; (2) Solvay's investigation into Mr. Smothers' quarrel with Mr. Mahaffey was inadequate; and (3) Solvay managers previously took negative action against Mr. Smothers because of his FMLA-protected absences. Together these grounds create a triable issue of fact as to whether Mr. Smothers' FMLA leave was a substantial motivation in Solvay's decision to fire him.

*Id.* at 540. "[W]e conclude Mr. Smothers has established a genuine issue of material fact as to whether Solvay's stated reasons for firing him were pretextual." *Id.* at 544. The Tenth Circuit held similarly with respect to Plaintiff's ADA claims. To the extent there was evidence of pretext relating to Plaintiff's FMLA claims, the same evidence of pretext may support his ADA claim. *Id.* at 546–47.

## DISCUSSION

There are three motions in limine. Two are made by Defendant, with the remaining one made by Plaintiff. Defendant's two motions concern: (1) Whether Plaintiff may introduce evidence concerning Defendant's four-step disciplinary process that is included in its employee handbook; and (2) Whether the testimony of Plaintiff's treating physicians and other healthcare providers may be limited from offering trial testimony falling within Rule 702. Doc. Nos. 54; 55. Plaintiff's single motion raises three issues: (1) forbid Defendant

3

from introducing any evidence suggesting Plaintiff posed a direct threat of harm and/or was a safety risk to himself or others due to his chronic pain and/or prescription medication use; (2) forbid Defendant from introducing evidence that Plaintiff was an "at-will" employee; and (3) forbid Defendant from referencing the EEOC closing letter.

I. <u>Defendant's Motion in Limine Concerning the Four-Step Disciplinary Process [Doc. No. 54].</u>

Defendant seeks to forbid Plaintiff from introducing evidence concerning Defendant's four-step disciplinary process included in its employee handbook. Doc. No. 54. Defendant relies on Rule 403 as support, arguing any reference to the four-step disciplinary process is irrelevant and/or unfairly prejudicial. *Id.*

As support for its argument, Defendant relies on the following passage from the Tenth Circuit's opinion in this case:

> When Mr. Smothers began employment . . ., the company provided him with an employee handbook outlining workplace policies and disciplinary procedures ("the Handbook"). The district court concluded that the Handbook was an implied employment contract, and Solvay does not challenge this holding. The Handbook contained a four-step progressive disciplinary process, with termination as a last resort. But it also contained a provision allowing Solvay to terminate an employee immediately for a serious offense, including a safety violation.
>
> \* \* \*
>
> Thus, to prove Solvay violated his implied employment contract, Mr. Smothers must show that it failed to comply with the disciplinary policy as defined in the Handbook. But the Handbook provision 'unambiguously gives [Solvay] the discretion to discharge employees who' violate safety rules. And Mr. Smothers concedes that he violated a safety rule. He has not shown how Solvay's decision to discharge him violated the terms of the Handbook.

*Smothers*, 740 F.3d at 547 (internal citation omitted).

4

The passage cited by Defendant dealt only with Plaintiff's breach of contract claim, which is no longer in this case. But Defendant believes this language makes the four-step disciplinary process "of **no** consequence." Doc. No. 54, p. 3 (emphasis in original). Defendant argues "it is [] improper and unfairly prejudicial if Plaintiff's counsel refers to the four-step disciplinary process as such question will necessarily imply that Defendant had a legal duty to consider and apply the four-step process." *Id.* at 4.[2]

In response, Plaintiff argues evidence concerning the four-step disciplinary process is relevant to the question of whether Defendant's stated reason for termination (a safety violation) was pretextual.

To prove his FMLA and ADA claims, Plaintiff must prove Defendant's non-discriminatory reason for termination was pretextual. *Smothers*, 740 F.3d at 538. To prove that, it is certainly relevant to Plaintiff's case to demonstrate, through introduction of the employee handbook and attendant testimony, that Defendant did not follow its own disciplinary process with respect to him but did with respect to treatment of other, similarly situated employees. As the Tenth Circuit has noted, evidence that a company "acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances" may support a finding of pretext. *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); *see also Trujillo v. PacifiCorp*, 524 F.3d 1149, 1160 (10th Cir. 2008) ("The failure to progressively discipline the Trujillos as PacifiCorp did other similarly situated employees, in addition to its failure to conduct what appeared to be a fair

---

[2] In addition, Defendant states "[a] jury instruction may also be needed to advise the jury that Defendant did not breach any of its legal obligations owed under the Handbook." This is a matter that needs to be addressed when jury instructions are compiled, not at the motion in limine stage.

5

investigation of the Trujillos' alleged time theft, create genuine issues of material fact on whether PacifiCorp's reason for terminating them was pretextual.").

Granted, in its opinion, the Tenth Circuit noted the handbook provision "[did not] require Solvay to exercise its discretion consistently when responding to different employees' violations." *Smothers*, 740 F.3d at 547. But it is important to recognize that this statement was made with respect to Plaintiff's breach of an implied employment contract. To prove that claim, Plaintiff had to demonstrate that Solvay "fail[ed] to follow its own required procedures or fire[d] an employee without cause." *Id.* (citing Wyoming law). "Wyoming law allows immediate termination for serious offenses when expressly permitted by the employee handbook." *Id.* (citation omitted). Here, nowhere in the handbook did it limit Solvay's ability to terminate an employee who committed a serious safety violation. Consequently, whether Defendant treated other, similarly situated employees differently than Plaintiff was wholly irrelevant to whether Defendant breached an implied employment contract.

The Tenth Circuit's discussion of Plaintiff's breach of an implied employment contract is irrelevant to whether Defendant violated the FMLA and/or the ADA. Defendant wishes to stretch the Tenth Circuit's breach of implied employment contract discussion to Plaintiff's FMLA and ADA claims. This is unsupported.

The Court will reserve ruling on this issue until it comes in at trial. If Plaintiff wishes to merely argue Defendant failed to follow its disciplinary process, this would be inappropriate; especially since Plaintiff's safety violation, which he admitted to, authorized immediate termination. *See Smothers*, 740 F.3d at 547.

If, however, Plaintiff seeks to use the four-step disciplinary process to prove that it existed and that other, similarly situated employees were disciplined in compliance with it, but he was not, then such evidence would be appropriate. *See Trujillo*, 524 F.3d at 1160. Part of Plaintiff's pretext argument is that he was treated differently than other, similarly-situated employees who violated comparable rules. Introduction of the four-step disciplinary process would be relevant in proving this.

II. <u>Defendant's Motion in Limine Concerning the Testimony of Plaintiff's Treating Physicians and Other Healthcare Providers [Doc. No. 55].</u>

Defendant seeks to "limit the testimony of [Plaintiff's] treating physicians and other healthcare providers to bar them from offering trial testimony that falls within the scope of Rule 702." Doc. No. 55, pp. 1–2. In his expert designation filing, Plaintiff designated Dr. Kurt Hunter, Mark Sanders, P.A., Dr. Lynn Webster, and Troy Hunter, P.A. Doc. No. 16.[3] Defendant asserts Plaintiff has failed to provide the "written reports and summaries of the facts and opinions to which they are expected to testify." Doc. No. 55, p. 2. By failing to provide these written reports and opinions, Defendant argues it has been deprived of the opportunity to prepare for trial, and, therefore, these witnesses should be barred from testifying within the scope of Rule 702.

FED. R. EVI. Rule 702 governs the testimony of experts. It provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[3] He also designated Dr. Jerome F. Sherman as his economist. Doc. No. 16, p. 1–2. It does not appear Defendant has any issue with Dr. Sherman.

7

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

> The IPT Order in this case provided:
>
> In accordance with U.S.D.C.L.R. 26.1(g), [the Parties] shall designate expert witnesses and provide [the other] with a complete summary of the testimony of each expert[.] . . . . *These summaries SHALL include a comprehensive statement of the expert's opinions and the basis for the opinions. See Smith v. Ford Motor Company,* 626 F.2d 784 (10th Cir. 1980). This expert designation does not satisfy the obligation to provide an expert report under Federal Rule of Civil Procedure 26(a)(2)(B). . . .
>
> In cases where treating medical or mental health providers, . . . may or will be called to testify at trial in part or in full as an expert witness, the party calling that witness SHALL designate that medical or mental health provider as an expert witness.

Doc. No. 10, pp. 6–7 (emphasis added).

In his expert designations, Plaintiff states these witnesses "have not been retained or specifically employed as expert witnesses; rather their testimony would be that of a treating physician and be based upon their records. Doc. No. 16.[4] This testimony "will include . . . their diagnosis that Smothers suffered from degenerative disc disease of the cervical as well as the lumbar spine, postlaminenctomy syndrome, cervical region and lumbar radiculitis." *Id.* "They will testify regarding their diagnosis, treatment, and prognosis of Steve Smothers, as is set forth in the medical records produced with Self Executing Discovery." *Id.*

---

[4] The designation for all four treating physicians is identical.

Under FED. R. CIV. P. Rule 26(a)(2)(C), a witness who is not required to provide a written report, must still provide a summary of the facts and opinions regarding the witness's testimony if his or her testimony falls within the scope of Rule 702, 703, or 705. *Id.* In other words, even if a witness is not required to provide a written report, he or she may still testify as an expert if he or she is designated as such and provides the requisite summary of facts and opinions. Defendant is arguing Plaintiff has failed to provide the requisite summary of facts and opinions. According to Defendant, because of Plaintiff's failure to provide a summary of the designated witness' testimony, they should "only be allowed to provide lay witness testimony as to the facts and circumstances of Plaintiff's treatment." Doc. No. 55, p. 4.

In response, Plaintiff argues his designations were proper. Doc. No. 58. It appears Plaintiff argues he has provided a summary of the facts and opinions by providing their medical records. *Id.* at 2. Plaintiff argues these medical records were provided as part of his self-executing discovery and they "clearly show the treatment provided and the reasons the various treatments were pursued or not." Plaintiff states each witness's "individual medical records were provided." *Id.* at 3. Consequently, according to Plaintiff, "Defendant [is] not required to 'sift' through voluminous records." *Id.* Finally, Plaintiff states his expert witnesses will only be providing testimony regarding Plaintiff's physical impairments, how each arrived at their respective diagnosis, and what treatment was provided and why. *Id.* at 4.

In anticipation of Plaintiff's argument that the medical records constitute the witness's summary of facts and opinions, Defendant argues that "merely referencing the

medical records associated with the specific healthcare provider fails to satisfy the requirements of Rule 26(a)(2)(C)." Doc. No. 55, p. 5 (citing *Kirkbride v. Terex USA, LLC*, No. 2:10–cv–660–TC–EJF, 2013 WL 4854455, at *1 (D. Utah Sept. 11, 2013)). The Court has not been provided with the medical records Plaintiff references. Defendant, however, does not argue it has not been provided these records. Rather, their grievance appears to be that they should not have to "sift" through the medical records to determine the facts and opinions of Plaintiff's expert witnesses. The Court agrees with Defendant.

The IPT Order specifically states the party designating the expert "shall" provide a summary of the facts and opinions that the expert will testify to. Doc. No. 10. It is well-settled that a party may not merely rely on the medical records of their treating physicians to satisfy this requirement. *See Kirkbride*, 2013 WL 4854455, at *1 ("[R]eference to the medical records alone does not meet the Rule 26 requirements[.]") (citing *Schultz v. Ability Ins. Co.*, No. C11–1020, 2012 WL 5285777 (N.D. Iowa Oct. 25, 2012) (reference to medical records, without more, does not satisfy the disclosure requirement of Rule 26(a)(2)(C)); *Smith v. Barrow Neurological Institute*, No. CV 10–01632–PHX–FJM, 2012 WL 4359057 (D. Ariz. Sept. 21, 2012) (referring to medical records associated with a treating physician fails to meet the requirements of Rule 26(a)(2)(C) and is ground to strike experts); *Lopez v. Keeshan*, No. 4:11CV3013, 2012 WL 2343415 (D. Neb. June 20, 2012) (same); *Ballinger v. Casey's General Store, Inc.*, No. 1:10–cv–1439–JMS–TAB, 2012 WL 1099823 (S.D. Ind. March 29, 2012) (permitting a party to provide medical records in lieu of a summary "would invite a party to dump a litany of medical records on an opposing party" and is contrary to "summary" requirement of Rule 26(a)(2)(C)); *Davis v. GEO Group*, Civil Action No. 10–cv–02229–WJM–

KMT, 2012 WL 882405 (D. Colo. March 15, 2012) (medical records insufficient under Rule 26(a)(2)(C), but amended disclosure permitted in light of time remaining before trial); *Brown v. Providence Medical Center*, No. 8:10CV230, 2011 WL 4498824 (D. Neb. Sept. 27, 2011) (disclosure of medical records insufficient as "court will not place the burden on Defendants to sift through medical records in an attempt to figure out what each expert may testify to."); *Kristensen ex rel. Kristensen v. Spotnitz*, Civil Action No. 3:09–CV–00084, 2011 WL 5320686 (W.D. Va. June 3, 2011) ("Plaintiffs cannot comply with [Rule 26(a)(2)(C) ] by disclosing the complete records of treating physicians in issue.")). Consequently, Plaintiff has failed to provide the requisite summary of its experts' facts and opinions.

Even though Plaintiff has failed to do as required, Plaintiff's deficient designations were made well over two years ago. Doc. No. 16 (Plaintiff's designation made on October 17, 2011). Only now, two weeks before trial, has Defendant raised this issue. Consequently, instead of forbidding Plaintiff's experts from giving Rule 702, 703, or 705 testimony, the Court will provide Plaintiff until Monday, July 7, 2014 at 5:00 P.M. to provide the requisite summaries. This will give Defendant a week to review them in conjunction with the medical records they have had access to for almost three years. If Plaintiff fails to do so, then his experts will be limited to only testifying about their personal knowledge and treatment of Plaintiff, and not on matters concerning future prognosis; which is something Plaintiff has stated his witnesses would seek to testify to.

III.   Plaintiff's Motion in Limine [Doc. No. 56].

Even though Plaintiff has filed a single motion in limine, he raises three issues:[5] (1) forbid Defendant from introducing any evidence suggesting Plaintiff posed a direct threat of harm and/or was a safety risk to himself or others due to his chronic pain and/or prescription medication use; (2) forbid Defendant from introducing evidence that Plaintiff was an "at-will" employee; and (3) forbid Defendant from referencing the EEOC closing letter. Doc. No. 56.

**A. Issue 1**

Plaintiff seeks to keep Defendant from suggesting he posed a direct threat of harm and/or was a safety risk to himself or others due to his chronic pain and/or prescription medication usage.

In response, Defendant argues "introduction of direct threat defense evidence is proper and use of such evidence is more appropriately addressed through jury instructions." Doc. No. 59, p. 2. Defendant notes that "[a] 'direct threat' means 'a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.'" *Id.* (citing *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1290 (10th Cir. 2000)).

"[A]n employer may take action against an employee who poses a 'direct threat' to the health or safety of other individuals in the workplace." *Den Hartog v. Wasatch Academy*,

---

[5] Plaintiff has raised a fourth "issue," which seeks a general admonishment from the Court to Defendant from stating that Plaintiff has sought the exclusion of any of the above. This is not a proper issue to be addressed through a motion in limine because it does not seek to exclude any evidence. Rather, it seeks to exclude certain argument. Such an issue can, if need be, addressed during trial through a proper objection.

129 F.3d 1076, 1087 (10th Cir. 1997) (citing 42 U.S.C. § 12113(b) (1994)).[6] "The availability of these *affirmative defenses* establishes that there are certain levels of disability-caused conduct that need not be tolerated or accommodated by employers." *Id.* (emphasis added).

The Court agrees with Plaintiff. Defendant has consistently argued it fired Plaintiff because of a safety violation. *See* Doc. No. 6 (Defendant's Answer), p. 13 (stating that Plaintiff was dismissed "wholly due to Plaintiff's safety violation") (emphasis added), p. 14 (stating Plaintiff was fired because of his "intentional and knowing violation of his employer's safety policies"); Doc. No. 21 (Defendant's Memorandum in Support of Motion for Summary Judgment), p. 6 ("On August 27, 2008, Solvay terminated Plaintiff's employment for this serious safety violation of the company's Lock Out and Line Break procedures."); *see also* Joint Final Pretrial Order. This is its nondiscriminatory reason for firing Plaintiff. Moreover, the safety violation Plaintiff committed had nothing to do with his chronic pain and/or medication use.

There has been no indication Defendant fired Plaintiff because he was a safety risk to himself or others because of his chronic pain and/or medication use. While evidence of "direct threat" can be used as an affirmative defense in ADA cases, Defendant does not have such a luxury. In its Answer, nowhere does Defendant raise a "direct threat" affirmative defense. *See generally* Doc. No. 6, pp. 11–15. "The general rule is that a party waives a right to raise an affirmative defense at trial when the party fails to raise the defense in its pleading." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) (citation omitted). Granted, "[a] court may consider an affirmative defense that did

---

[6] The provision of this statute is the same today.

13

not appear in the answer, if the plaintiff has suffered no prejudice from the failure to raise the defense in a timely fashion." *Miranda De Villalba v. Coutts & Co.*, 250 F.3d 1351, 1353 (11th Cir. 2001) (citation omitted); *see also* FED. R. CIV. P. Rule 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]"); *cf. Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 578 (5th Cir. 2009) ("[T]hough Knoblauch raised qualified immunity fifty-two months after the complaint was filed, substantial time remained before trial for Pasco to respond to the defense.").

Being that this case is nearly three years old, however, and the fact Defendant has relied on the same theory of the case this entire time (i.e., that Plaintiff was terminated because of a serious safety violation and his "belligerent" attitude), the Court has a hard time not seeing the prejudice caused to Plaintiff by allowing Defendant the opportunity to amend its Answer two weeks before trial. *See Knoblauch*, 566 F.3d at 578; *see also Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995).

In sum, this evidence is irrelevant and/or unfairly prejudicial under Rule 403. Defendant has not raised the affirmative defense of "direct threat" in the last three years. It only does so now—two weeks before trial.

**B. Issue 2**

Plaintiff wants to forbid Defendant from referencing that he was an "at-will" employee. Defendant does not oppose this. Doc. No. 59, p. 3–4.

In any event, the Court agrees with Plaintiff. In the proposed Final Pretrial Order, Defendant has admitted it is subject to the requirements of the FMLA and the ADA. Also, Defendant has conceded Plaintiff was an eligible employee under the FMLA. Whether

Plaintiff was at-will (which he was), is irrelevant, and, therefore, inadmissible under Rule 403. Even if Plaintiff had no protected interest in continued employment, if he was in fact terminated for his FMLA leave or because of leave regarding his alleged impairment under the ADA, Defendant is liable regardless of whether Plaintiff was at-will. To conclude otherwise would nullify the protections provided by the FMLA and the ADA.

### C. Issue 3

Plaintiff wishes to forbid Defendant from referencing the EEOC letter he received in this case stating: "The EEOC is closing its file on this charge for the following reason: The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." Doc. No. 56, p. 2. Plaintiff argues introduction of this letter would violate Rule 403 because it is irrelevant and/or unfairly prejudicial. Defendant argues the only use for this letter is for jurisdictional purposes. Doc. No. 59, p. 5. Defendant has stated it "does not plan to introduce any evidence or testimony at trial referencing the EEOC closing letter." *Id.*

In any event, the Court agrees with Plaintiff.[7] First, the EEOC letter does not explicitly state that Defendant did not violate the FMLA or the ADA. The letter only says the EEOC was "unable to conclude" that a violation occurred based on the information received. There is no indication what information was received. Second, the letter explicitly states the EEOC is not saying Defendant was in compliance with the statutes. To allow

---

[7] Other than the quote referenced in Plaintiff's motion, the Court has not been provided the full text of the EEOC letter.

15

introduction of the letter would violate Rule 403 because it would more than likely confuse or, worse, mislead the jury. *See, e.g., Sherman v. Chrysler Corp.*, 46 Fed.Appx. 716, 723 (6th Cir. 2002) ("An EEOC letter of violation is presumptively inadmissible "because it 'suggests that preliminarily there is reason to believe that a violation has taken place' and therefore results in unfair prejudice to defendant."") (citing *Williams v. The Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) (quoting *EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1095 (5th Cir. 1994))); *Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3d Cir. 2002) (affirming the district court's decision to exclude an EEOC Letter of Determination on Rule 403 grounds); *Cambra v. Restaurant School*, No. Civ.A.04-2688, 2005 WL 2886220 at *5 (E.D. Pa. Nov. 2, 2005) ("Because the Letter draws categorical legal conclusions that are at the heart of this case, its minimal probative value is substantially outweighed by the danger of unfair prejudice. Moreover, the Letter is cumulative and it has the potential to confuse the issues and mislead the jury.").

## CONCLUSION

For the reasons discussed above, the Court will reserve ruling on Defendant's motion regarding the introduction of the four-step disciplinary process until more is known regarding the context if/when such evidence comes in at trial. The Court denies Defendant's motion regarding the exclusion of Plaintiff's expert witnesses, but will allow Plaintiff to provide the requisite summary of the facts and opinions no later than July 7, 2014 at 5:00 P.M.. With respect to Plaintiff's motion, the Court concludes it is granted.

IT IS ORDERED the Court RESERVES ruling on Defendant's motion regarding the four-step disciplinary process [Doc. No. 54] until trial.

IT IS FURTHER ORDERED Defendant's motion regarding the testimony of Plaintiff's treating physicians [Doc. No. 55] is DENIED. Plaintiff shall provide Defendant with a summary of his experts' facts and opinions in accordance with the Initial Pretrial Order no later than July 7, 2014 at 5:00 p.m. or his experts' testimony will be limited to testifying about their personal knowledge and treatment of Plaintiff, and not on matters concerning future prognosis.

IT IS FINALLY ORDERED Plaintiff's motion [Doc. No. 56] is GRANTED.

Dated this ___3___ day of July, 2014.

_____
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE