

**FILED**

UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

*12:14 pm, 9/15/14*
**Stephan Harris**
**Clerk of Court**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

STEVEN SMOTHERS,

    Plaintiff,

    vs.                                    Case No. 11-CV-200-F

SOLVAY CHEMICALS, INC., a
Delaware corporation,

    Defendant.

---

## ORDER DENYING DEFENDANT'S RENEWED RULE 50 MOTION [DOC. 99]; DENYING DEFENDANT'S MOTION FOR REMITTITUR OR IN THE ALTERNATIVE A NEW TRIAL [DOC. 104]; DENYING AS MOOT DEFENDANT'S MOTION FOR ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW [DOC. 101]; DENYING AS MOOT PLAINTIFF'S MOTION TO STRIKE [DOC. 108]; AND DENYING PLAINTIFF'S MOTION FOR ADDITUR [DOC. 121]

---

This matter is before the Court on three post-trial motions filed by Defendant and two filed by Plaintiff. Defendant filed a Renewed Rule 50 Motion [Doc. 99], a Motion for Remittitur or in the Alternative a New Trial [Doc. 104], and a Motion for Additional Findings of Fact and Conclusions of Law [Doc. 101]. Plaintiff filed a Motion to Strike [Doc. 108] and a Motion for Additur [Doc. 121]. The Court has considered the motions, responses, replies, is otherwise fully informed in the premises, and concludes all five motions are DENIED.

## INTRODUCTION[1]

On July 19, 2014, after four and a half days of trial, the jury in the above-captioned case returned a verdict for Plaintiff on his claim under the Family Medical Leave Act ("the FMLA") and for Defendants on Plaintiff's claim under the American with Disabilities Act ("the ADA").

At trial, Defendant argued Plaintiff was terminated because of a safety violation at work and his "belligerent attitude" after-the-fact.  Plaintiff argued he was terminated for using FMLA protected leave, and that Defendant's stated reason for his termination was a mere pretext for retaliating against him for his FMLA leave.

The jury awarded Plaintiff $740,535.00, representing back pay and benefits lost as a result of Defendant's violation of his FMLA rights.  In addition, the Court has awarded Plaintiff liquidated damages in an amount equal to his back pay award plus pre-judgment interest set at 3.25%, compounded annually.  Finally, the Court concluded Plaintiff was not entitled to front pay.  *See* Order on Findings of Fact and Conclusions of Law.

## DISCUSSION

### I.   Defendant's Renewed Motion for Judgment as a Matter of Law

Following the close of Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law.  That motion was denied.  Following the verdict, Defendant moved again for judgment as a matter of law.  Doc. 99 [Renewed Rule 50 Mot. for Judgment as a Matter of Law].  Defendant argues Plaintiff did not present a prima facie claim under the FMLA

---

[1] The Court's Order on Findings of Fact and Conclusions of Law entered in this case contains a more detailed description of the facts of this case.

because he did not present expert medical testimony establishing he suffered from a serious medical condition.  For the reasons discussed below, Defendant's motion is DENIED.

Following the judgment in a civil case, a party who has previously moved for judgment as a matter of law may renew that motion within 28 days.  Fed. R. Civ. P. 50(b). "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the non-moving party's position."  *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (citation and quotations omitted).  "In deciding a new trial motion based on insufficiency of the evidence, a district court must analyze whether the verdict is clearly, decidedly or overwhelming against the weight of the evidence."  *Id.* (citation and quotations omitted).

Entitled to FMLA leave requires Plaintiff prove:

a. He engaged in FMLA-protected activity;
b. Defendant terminated his employment; and
c. Defendant terminated his employment because Plaintiff engaged in FMLA-protected activity.

Jury Instruction No. 20; *see also* 29 U.S.C. §§ 2612(a)(1); 2615(a)(2).  The FMLA-protected activity at issue was Plaintiff's use of FMLA leave because of a serious medical condition that made him unable to perform his essential job functions.  Jury Instruction No. 19; *see also* 29 U.S.C. § 2612(a)(1)(D).

Defendant argues, after trial, that Plaintiff was never entitled to his FMLA leave because he did not establish he suffered from a serious medical condition.  *See* Doc. No. 100, p. 2.  The gravamen of Defendant's claim is Plaintiff never presented expert testimony from a healthcare provider to show he suffered from a serious medical condition leaving him unable to perform the functions of his position.  *Id.*

The fate of Defendant's current argument, however, was sealed prior to trial. The issue in this case was not whether Plaintiff engaged in FMLA-protected activity, but rather whether Defendant unlawfully retaliated against him because of that leave. As noted in the Final Pretrial Order, one of the uncontested issues of fact was that "Plaintiff utilized intermittent FMLA to cover his absences . . . and *Defendant approved most if not all of his absences as leave under the FMLA*." Doc. 63 at 4 ¶ 15 (emphasis added). Moreover, in the "Contested Issues of Fact" section of the Final Pretrial Order, there is no statement that Defendant is challenging Plaintiff's use of FMLA leave. *See id.* The issue was whether Defendant unlawfully retaliated against him for using FMLA leave. *See* Doc. 63 at 1–3 (General Nature of the Claims of the Parties), 8 (Defendant stating that one of the contested issues of law was whether Defendant's stated reasons for terminating Plaintiff was merely a pretext for retaliation).

At trial, Plaintiff described his serious medical conditions. Starting in 1994, Plaintiff began experiencing numbness and pain in his left arm, as well as pain in his neck. This pain began to interrupt his sleep, causing Plaintiff to seek medical attention. An MRI revealed Plaintiff had compressed disks and bone spurs in his neck. In 1996, Plaintiff had surgery to address the pain in his neck. A diskectomy with a fusion was performed, which entailed removing the disk and placing a bone between the C5 and C6 vertebrae. In 1998, Plaintiff had a similar operation because of complications with the first operation. A third surgery was done to address issues resulting from the second operation. The surgeries caused Plaintiff's C5 and C6 vertebrae and his C6 and C7 vertebrae to be fused.

Even with the surgeries, Plaintiff still has pain in his neck, between his shoulder blades, and in his left trapezius.  In addition, Plaintiff experiences migraines as a result of his neck condition.  In 1998, Plaintiff began experiencing pain in his lower back.  He has compressed disks, bone spurring, arthritic conditions, and some subluxation.  As a result, many x-rays and MRIs have been conducted on his lower back.  On August 28, 2005, doctors diagnosed Plaintiff with a degenerative disk.  As a result of Plaintiff's medical conditions, he experiences pain in his lower back, with varying degrees of severity.  Between 2005 and 2008, Plaintiff received injections in his lower back to alleviate the pain.  He also had prolotherapy to strengthen the ligaments in his spine.  No additional surgery has been performed, however, because the odds for a successful treatment are relatively low. Plaintiff's medical conditions persisted through the date of his termination with Defendant. As a result of his medical conditions, Plaintiff testified there were times when he was unable to go to work.

As noted above, the vast majority of Plaintiff's absences caused by his medical condition were approved by Defendant as FMLA leave.  *See also* Doc. 111-2.

Defendant cites *Schaar v. Lehigh Valley Health Services, Inc.*, 598 F.3d 156 (3d Cir. 2010), for the proposition that expert medical testimony is required in FMLA cases, but the facts in *Schaar* are distinguishable.  In *Schaar*, the Third Circuit stated "an employee may satisfy her burden of proving three days of incapacitation [under the FMLA] through a combination of expert medical and lay testimony." *Id.* at 161.  The issue in *Schaar*, however, was not whether her employer wrongfully retaliated against her for her use of FMLA leave, but whether she was even entitled to FMLA leave. *Id.* at 158.  Similarly, in *Rankin v. Seagate Technologies, Inc.*,

246 F.3d 1145 (8th Cir. 2001), the issue was whether the plaintiff was even entitled to FMLA leave. *Id.* at 1147.

In contrast, the issue here was whether Plaintiff's termination was motivated by Defendant's desire to retaliate against him for his use of FMLA leave. As noted in the pretrial order, as well as the evidence produced at trial, there was never a dispute as to whether Plaintiff was entitled to FMLA leave. Indeed, Defendant excused Plaintiff's absences as FMLA leave. Consequently, there was no need for Plaintiff to present expert medical testimony on whether he suffered from a serious medical condition. Defendant's renewed motion for judgment as a matter of law is, therefore, DENIED.

## II.    Defendant's Motion for Remittitur or in the Alternative a New Trial

Defendant filed a motion pursuant to Fed. R. Civ. P. 59 with respect to the amount of back pay the jury awarded Plaintiff. Doc. 104 [Mot. for Remittitur or in the Alternative a New Trial ("Mot. for Rem.")]. Defendant argues the amount of back pay must be substantially reduced because Plaintiff was work disabled beginning in March 2010, and he did not reasonably seek to mitigate his damages. Doc. 105 [Mem. in Supp. of Mot. for Rem.].

As noted above, the jury concluded Plaintiff lost $740,535.00 in the form of back pay and benefits due to Defendant's decision to unlawfully terminate him. Doc. 87 [Verdict Form]. Defendant argues the jury's award is not supported by the evidence, and the Court should, therefore, reduce the award, or in the alternative, grant a new trial. Doc. 105. [Mem. in Supp. of Mot. for Rem.]. According to Defendant, the maximum amount supported was $265,642. *Id.* at 15.

"'[A] motion for a new trial [or remittitur] on the grounds that the jury verdict is against the weight of the evidence normally involves a review of the facts presented at trial, and thus involves the discretion of the trial court.'"  *Escue v. Northern OK College*, 450 F.3d 1146, 1156–57 (10th Cir. 2006) (quoting *Black v. Hieb's Enters.*, 805 F.2d 360, 363 (10th Cir. 1986)) (first alteration in original).  A jury's verdict "must be upheld unless it is clearly, decidedly or overwhelmingly against the weight of the evidence." *Id.* at 1157 (citation and quotations omitted).  When considering a Rule 59 motion, "all evidence must be viewed in the light most favorable to the prevailing parties." *Spahr v. Ferber Resorts, LLC*, 686 F.Supp.2d 1214, 1217 (D. Utah 2010) (citing *Escue*, 450 F.3d at 1156).

Defendant's argument that the back pay award must be reduced is two-fold.  First, Defendant argues that beginning in March 2010 Plaintiff was "work disabled" and, therefore, cannot collect back pay and benefits beyond that date.  Doc. 105 [Mem. in Supp. of Mot. for Rem.] at 9–11.  Second, Defendant argues Plaintiff failed to mitigate his damages. *Id.* at 12–15.  For the reasons discussed below, both arguments fail.

A.  <u>Back Pay</u>

With respect to Defendant's first argument, it is based on a March 2010 letter from Plaintiff's medical provider.  In it, Plaintiff's medical provider states:

> I do not anticipate this patient's condition to significantly improve in the future.  I consider this patient at a maximum medical improvement and that his chronic conditions will continue to impede his ability to work.  This patient has to alternate frequently between sitting, standing/walking with lying down because of his pain.  Due to this fact, I do not anticipate this patient would be productive in most any other working capacities.  I support this patient's decision to apply for disability.

7

*Id.* at 4.[2]  Given this letter, Defendant argues that beginning in March 2010, Plaintiff would not have been employed at Solvay, and, therefore, cannot be awarded back pay from March 2010 forward.  *Id.* at 9–11.

Plaintiff responds by arguing that the March 2010 letter was not written by Plaintiff, but rather by his medical provider.  Doc. 115 [Resp. to Mot. for Additur] at 9.  Moreover, Plaintiff argues that although he had briefly contemplated filing for disability, he ultimately decided against it because he did not believe he was work disabled.  Trial Tr. vol. 3, 21–22; 121–25.

The Court agrees with Plaintiff.  At no time has Plaintiff been declared work disabled. Granted, in March 2010, his medical provider listed his ailments and how they affected his ability to work.  However, nowhere does his medical provider state he would be unable to perform his job duties, with his ailments, while utilizing his rights provided by the FMLA and/or the ADA.[3]  Indeed, from 1994, when his ailments first surfaced, until 2008, when he was terminated, Plaintiff was able to perform the essential functions of his job while utilizing FMLA leave.  Even if this Court would have concluded differently than the jury, there was sufficient evidence to support the jury awarding him back pay and benefits from August 2008 to the date of the verdict.[4]

---

[2] This letter was presented as an exhibit to the jury.

[3] As noted by Defendant, the jury concluded that Plaintiff had a disability under the ADA when it came to the major life activity of sleep.  At no time has Plaintiff argued, however, that he was disabled in the major life activity of work.

[4] This conclusion does not conflict with the finding in the Court's Findings of Fact and Conclusions of Law that Plaintiff is not entitled to front pay.  The decision on the amount of back pay and benefits to award is left to the jury.  Based on the evidence at trial, there was sufficient evidence to support the jury's award on back pay.  The issue of front pay, however, is an equitable remedy left to the Court's discretion.  *Whittington v. Nordam*

B. Mitigation

Defendant argues that Plaintiff's award of back pay must be reduced for failure to mitigate. Doc. 105 at 12–15. Defendant's argument is based on the testimony of Dr. Janzen that Plaintiff did not reasonably seek comparable employment. Specifically, Defendant relies on Dr. Janzen's testimony that Plaintiff should have been seeking employment as a welding inspector, piping inspector, and/or maintenance supervisor. *Id.* at 6. According to Dr. Janzen, these positions were "most specific with his transferable skills[.]" *Id.* at 7 (citing Trial Tr. vol. 5, 24–25). For the reasons discussed below, Defendant's argument fails.

The jury was instructed with respect to mitigation of damages. Instruction No. 23 specifically stated:

> Defendant argues that Plaintiff's claims for lost wages and benefits should be reduced. If you find that Plaintiff did not take reasonable actions to reduce his damages, and that Plaintiff reasonably may have found comparable employment if he had taken such action, you should reduce any amount you might award Plaintiff for lost wages and benefits by the amount he reasonably would have earned during the period for which you are awarding lost wages and benefits. Defendant must prove by a preponderance of the evidence that reduction should be made and its amounts.

Doc. 86 at 33. "Jurors are presumed to follow the judge's instructions." *U.S. v. Templeman*, 481 F.3d 1263, 1266 (10th Cir. 2007) (citation omitted).

At trial, Plaintiff testified about his job search efforts after being terminated. He testified he had applied for comparable employment with other trona mines. He discussed

---

*Group, Inc.*, 429 F.3d 986, 1000 (10th Cir. 2005) (citation omitted). The Court concluded that based on the evidence presented, Plaintiff was not entitled to front pay because his ability to be reinstated by Solvay was highly speculative. Notably, his medical provider's March 2010 letter and determination, coupled with Plaintiff's testimony that his ailments have not improved and/or continue to worsen since his termination, made an award of front pay highly speculative. This is especially true since Plaintiff is 57 years old and was claiming front pay until he was 64 years old.

the difficulty he experienced based on his age, the reason Solvay terminated him, and the difficult economy.  On cross-examination, Defendant again questioned Plaintiff regarding his efforts to find comparable employment.

On cross-examination of Defendant's expert, Plaintiff's counsel noted that Plaintiff had applied for a number of positions Defendant's expert discussed but was rejected.  Dr. Janzen noted that Plaintiff had applied to Questar Gas, Williams Field Service, the Sinclair refinery in Rawlins, FMC, and Anadarko Petroleum.  He applied numerous times for some of these positions, but was not successful.  Plaintiff went through testing to obtain some of these positions.  In addition, as noted by Defendant's expert, the reason for Plaintiff's termination was something that needed to be "explained."

"A claimant is required to make only reasonable exertions to mitigate damages, and is not held to the highest standards of diligence.  It does not compel him [or her] to be successful in mitigation.  It requires only an honest, good faith effort." *U.S. v. Lee Way Motor Freight, Inc.*, 625 F.2d 918, 938 (10th Cir. 1979).  As evidenced by the jury's verdict and award of Plaintiff's full back pay and benefits, it found that Plaintiff had undertaken reasonable mitigation efforts post-termination.  Based on the evidence produced, this Court cannot conclude that the jury's finding was "clearly, decidedly or overwhelmingly against the weight of the evidence." *Escue*, 450 F.3d at 1157.

For the reasons discussed, Defendant's motion for remittitur or in the alternative for new trial is, therefore, DENIED.

## III.    Defendant's Motion for Additional Findings of Fact and Conclusions of Law

Defendant has filed a motion seeking the Court make certain additional findings of fact and conclusions of law.  Doc. 101 [Mot. for Add. Findings]; Doc. 102 [Mem. in Supp. of Mot. for Add. Findings].[5]  Defendant's arguments concern the appropriate amount of back pay and benefits, the appropriateness of liquidated damages and front pay, and the amount of pre-judgment and post-judgment interest.  All of the arguments advanced in Defendant's motion, however, have been rendered moot either by the discussion above or by way of the Court's Order on its Findings of Fact and Conclusions of Law.  Consequently, Defendant's motion is DENIED AS MOOT.

## IV.    Plaintiff's Motion to Strike

Plaintiff has filed a Motion to Strike the Affidavits of Charlene Tsang-Kao and James Maxfield filed in this matter on August 13, 2014.  Docs. 97-1, 98-1.  Presumably, Defendant filed the Affidavits after trial in an effort to show good faith and therefore avoid a liquidated damages award equal to the sum of back pay plus pre-judgment interest.  To avoid a liquidated damages award, the employer must prove to the satisfaction of the Court that the act or omission was in good faith.  29 U.S.C. § 2617(a)(1)(A)(iii).  To find for Defendant on the issue of liquidated damages would essentially require the Court to disregard the jury's findings, something this Court will not do.  Moreover, the Court's recently-entered Findings of Fact and Conclusions of Law render Plaintiff's motion to strike moot.  Consequently, Plaintiff's motion to strike is DENIED AS MOOT.

## V.    Plaintiff's Motion for Additur

---

[5] When Defendant filed its motion, the Court had not entered its Findings of Fact and Conclusions of Law.  In formulating its order, however, the Court took into consideration the arguments advanced in Defendant's motion.

Plaintiff filed a motion pursuant to Fed. R. Civ. P. 59 regarding the increased tax liability he will incur because of his back pay and pre-judgment interest award.  Doc. 121 [Mot. for Additur ("Mot. for Add.")].  The jury concluded Plaintiff lost $740,535.00 in back pay and benefits due to Defendant's unlawful termination of Plaintiff.  Doc. 87 [Verdict Form].  Plaintiff argues the jury's award does not account for the tax consequences of receiving a lump sum award for his back pay and pre-judgment interest.  Taking into account the tax penalty, Plaintiff claims the jury award will not make him whole, because he estimates he will be taxed 19% to 24.5% more due to the lump sum award.  Doc. 122.  [Memorandum in Support of Motion for Additur ("Mem. in Supp. of Mot. for Add.")].  Accordingly, Plaintiff argues a 20% enhancement of the jury award would make him whole.  *Id.* at 2.  The Court will not grant this motion.

Additur is prohibited in the federal courts because it involves an unconstitutional reexamination of the jury verdict in violation of the Seventh Amendment.  *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163, 1179 (10th Cir. 2011) (citation omitted).  Moreover, additur is a "bald addition of something which in no sense can be said to be included in the verdict."  *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935).  A jury's verdict "must be upheld unless it is clearly, decidedly or overwhelmingly against the weight of the evidence."  *Escue v. Northern OK College,* 450 F.3d 1146, 1156–57 (10th Cir. 2006) (quoting *Black v. Hieb's Enters.*, 805 F.2d 360, 363 (10th Cir. 1986)).  When considering a Rule 59 motion, "all evidence must be viewed in the light most favorable to the prevailing parties."  *Spahr v. Ferber Resorts, LLC*, 686 F.Supp.2d 1214, 1217 (D. Utah 2010) (citing *Escue*, 450 F.3d at 1156).

A court-imposed increase of damages encroaches on the defendant's right to a jury trial because it is a "bald addition" which was not part of the jury verdict. *ClearOne Communications, Inc. v. Biamp Systems*, 653 F.3d 1163, 1179 (10th Cir. 2011) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). Any such post-verdict additur would violate Defendant's Seventh Amendment right to a jury trial. Plaintiff had an opportunity to present this damages claim to the jury, but failed to timely do so. In fact, Plaintiff had already retained an economics expert, Dr. Jerome Sherman, who testified about the amount of wages and benefits Plaintiff lost as a result of his termination. Plaintiff gives no reason why he failed to have Dr. Sherman opine at trial on the tax consequences of receiving back pay and prejudgment interest in the same year. As such, Defendant is entitled to a jury verdict free from reexamination in the form of a judge-set additur. *Estes v. Southern Pacific Transp. Co.*, 598 F.2d 1195, 1199 (10th Cir. 1079).

Nonetheless, the lynchpin of Plaintiff's argument is *Sears v. Atchison, Topeka, & Santa Fe Railway*, in which the Tenth Circuit upheld an award which included a tax component to compensate for additional tax liability incurred by a lump sum payment of multiple years' back pay. 749 F.2d 1451, 1456-57 (10th Cir. 1984). The *Sears* Court cited the unavailability of income-averaging provisions that would have mitigated tax liability and also the protracted (seventeen years) nature of the litigation as the bases for its holding. In the *Sears* decision, that Court also sought to distinguish *Blim v. Western Electric Co.*, 731 F.2d 1473 (10th Cir. 1984), which Plaintiff also cites. In *Blim*, the Court held that no adjustment should be made because income-averaging provisions were available. Plaintiff notes the apparent emphasis the *Sears* and *Blim* Courts placed on income-average provisions in the tax code. In

distinguishing *Blim*, the *Sears* Court noted, however, "an important factor in [the *Blim*] decision was *the liquidated damages provision . . . providing for an automatic doubling of the back pay award to make up, in part, for the delays in receipt of payment.*" *Sears*, 749 F.2d at 1456 (emphasis added). Plaintiff is like *Blim* because he was awarded liquidated damages, doubling the back pay and pre-judgment interest award. The cases Plaintiff cites are not persuasive.

Moreover, even if a plaintiff seeks a tax penalty offset, a prevailing plaintiff in a discrimination case is not "presumptively entitled to an additional award to offset tax consequences . . . Employees will continue to bear the burden to show the extent of the injury they have suffered." *Eschelman v. Agere Systems, Inc.*, 554 F.3d 426, 443 (3rd Cir. 2009). Plaintiff offered no proof of the offset amount at trial and virtually none in its Motion for Additur. See *Hukkanen v. International Union of Operating Engineers*, 3 F.3d 281, 287 (8th Cir. 1993) (denying tax enhancement request because Plaintiff failed to produce evidence); *contra Eschelman*, 554 F.3d at 442-43 (granting tax enhancement request because Plaintiff submitted affidavit from an economic expert who calculated tax consequences of back pay award.).

For the reasons discussed, Plaintiff's motion for additur is, therefore, DENIED.

IT IS ORDERED Defendant's renewed motion for judgment as a matter of law is DENIED.

IT IS FURTHER ORDERED Defendant's motion for remittitur or in the alternative a new trial is DENIED.

IT IS FURTHER ORDERED Defendant's motion for additional findings of fact and conclusions of law is DENIED AS MOOT.

IT IS FURTHER ORDERED Plaintiff's motion to strike is DENIED AS MOOT.

IT IS FINALLY ORDERED Plaintiff's motion for additur is DENIED.

Dated this 15th day of September, 2014.

_____
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE